UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TARA B.,

                      Plaintiff,

v.                                          1:20-CV-0934
                                          (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>JUSTIN JONES, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | FERGUS KAISER, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 19.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.    RELEVANT BACKGROUND

## A.    Factual Background

Plaintiff was born in 1961.  (T. 88.)  She received her GED.  (T. 221.)  Generally, Plaintiff's alleged disability consists of hepatitis A, B, and C; post-traumatic stress disorder ("PTSD"); anxiety; depression; hypertension; and "foot pain."  (T. 220.)  Her alleged disability onset date is January 1, 2012.  (T. 88.)

## B.    Procedural History

On May 31, 2013, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 88.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On February 2, 2016, Plaintiff appeared before the ALJ, Sharon Seeley.  (T. 51-87.)  On April 22, 2016, ALJ Seeley issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 8-29.)  On September 16, 2017, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)

Plaintiff sought review in the United State District Court for the Western District of New York.  On June 12, 2019, the Court issued a Decision and Order remanding the matter.  (T. 687-697.)  On July 15, 2019, the AC issued an order for an administrative hearing.  (T. 699-703.)

On February 13, 2019, Plaintiff appeared before ALJ Timothy McGuan.  (T. 648-686.)  On March 27, 2020, ALJ McGuan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 629-647.)  Therefore, the ALJ's decision became the Commissioner's final decision, and Plaintiff timely commenced this action.

## C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 634-641.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 31, 2013.  (T. 634.)  Second, the ALJ found Plaintiff had the severe impairments of: major depressive disorder, generalized anxiety disorder, PTSD, and drug and alcohol abuse.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 635.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except Plaintiff can frequently kneel, stoop, and reach overhead, can perform simple, unskilled work which is of a routine and repetitive nature with no supervisor duties or production quotas, can occasionally interact with the public and frequently interact with supervisors and coworkers.  (T. 637.)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 640-641.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to assign controlling weight to the opinion of Plaintiff's treating physician.  (Dkt. No. 16 at 14-22.)  Second, and lastly, Plaintiff argues the ALJ failed to reconcile his RFC determination with the consultative

---

[1]      Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 416.967(c).

examiner's opinion.  (*Id.* at 22-26.)  Plaintiff also filed a reply in which she reiterated her original argument.  (Dkt. No. 18.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ properly assessed the medical opinions.  (Dkt. No. 17 at 6-12.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

> are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Treating Source Medical Opinion

Plaintiff argues the ALJ erred in weighing the opinions of Plaintiff's treating provider, John Napoli, M.D.  (Dkt. No. 16 at 14-22.)  Plaintiff argues the ALJ failed to apply the factors outlined in 20 C.F.R. § 416.927(c)[2], failed to provide "good reasons" for not affording the opinion controlling weight, and the ALJ's error was harmful.  (*Id*.)

In general, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).  When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella,* 925 F.3d at 95-96 (citation omitted); *see* 20 C.F.R. § 416.927(c)(2).

---

[2]     Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

A reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for his weight assessment.  *Estrella,* 925 F.3d at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

On January 21, 2016, Dr. Napoli completed a "Psychiatric Medical Report" form. (T. 625.)  Dr. Napoli indicated beginning August 31, 2015 through the date of the form he treated Plaintiff monthly.  (*Id*.)  He listed Plaintiff's diagnosis as: major depressive disorder, moderate; PTSD; generalized anxiety disorder; and noted a history of suicidal attempts, violence towards others, and psychiatric hospitalizations.  (*Id*.)  Dr. Napoli listed Plaintiff's prescribed medications and opined she did well with medication.  (*Id*.)  Without medication, the doctor wrote Plaintiff "reports depression [and] irritability."  (*Id*.)

On January 21, 2016, Dr. Napoli observed Plaintiff to have a cooperative attitude, good appearance, and normal behavior; hyperverbal at times, jumps from topic to topic, but overall normal organization with no perceptual disturbances; Plaintiff reported "good mood;" her affect was congruent to mood; her sensorium and intellect was normal; and she had limited insight, with poor judgment at times.  (T. 636.)  Dr. Napoli indicated Plaintiff had "stopped taking medication because she didn't think she needed it."  (*Id*.)  Dr. Napoli wrote Plaintiff appeared to relate to others appropriately.  (T. 627.)  When asked to comment on Plaintiff's ability to engage in sustained work activity, Dr. Napoli

wrote "unable to assess."  (T. 628.)  When asked if Plaintiff was currently using "drugs and/or alcohol," Dr. Napoli answered "no."  (*Id*.)

On June 30, 2016, Dr. Napoli completed a "Mental Residual Functional Capacity Questionnaire."  (T. 47.)  He was asked to clarify his January 2016 opinion in which he indicated that when Plaintiff was taking her medication she could generally function well; however, there were times where she did not take her medication.  (*Id*.)  When asked if he agreed with the above characterization of his pervious opinion, Dr. Napoli stated he did.  (*Id*.)  When asked if Plaintiff's refusal to take medications was a symptom of her mental illness, Dr. Napoli stated "likely, [Plaintiff] starts to feel better and stops medication consistent [with] individuals with bipolar disoder."  (*Id*.)  When asked what percentage of the time Plaintiff remained compliant with treatment, Dr. Napoli wrote "50%."  (*Id*.)  When asked if Plaintiff would be more likely to engage in noncompliance with recommended treatment if exposed to the stress of full-time work, Dr. Napoli answered "yes, she worked at one period of time part-time and was missing more appointments."  (*Id*.)  When asked if Plaintiff would be able to cope with the stress inherent in any work situation during periods of non-compliance, Dr. Napoli answered "unlikely."  (T. 48.)

The ALJ afforded Dr. Napoli's January 2016 opinion "some weight."  (T. 639.)  In his decision, the ALJ noted Dr. Napoli was the only treating mental health source to provide an opinion.  (T. 638.)  The ALJ noted the doctor had been treating Plaintiff monthly since August 2015.  (T. 639.)  The ALJ considered the doctor's list of medications and his statement that Plaintiff reported depression and irritability without medication.  (*Id*.)  The ALJ also considered the doctor's objective observations on

exam.  (*Id*.)  The ALJ considered Dr. Napoli's statement Plaintiff stopped medication in

the past; however, the ALJ noted there was no evidence that Plaintiff stopped

medication during her treatment under Dr. Napoli and that this observation appeared to

be based on her self-reports.  (*Id*.)  The ALJ took into consideration Dr. Napoli's

statement Plaintiff was not currently using drugs or alcohol, and that the doctor did not

mention Plaintiff's history of abuse.  (*Id*.)  Lastly, the ALJ concluded the doctor's

January 2016 opinion was not inconsistent with the ability to perform simple, routine

work.  (*Id*.)

The ALJ afforded Dr. Napoli's June 2016 opinion "little weight."  (T. 639-640.)

The ALJ specifically noted the doctor's statement that, consistent with someone

diagnosed with bipolar disorder, it was "likely" she stopped taking medication when she

started to feel better.  (T. 639.)  In support of his determination, the ALJ reasoned the

record failed to contain evidence that Dr. Napoli treated Plaintiff during a period in which

she stopped taking medication and the doctor's conclusion was therefore "speculative."

(*Id*.)  Further, the ALJ concluded the statement was not supported by Plaintiff's past

clinical record or her own behavior.  (T. 639-640.)  Lastly, the ALJ afforded Dr. Napoli's

statement that Plaintiff missed appointments when she worked part-time "little weight."

(T. 640.)  The ALJ concluded, based on evidence in the record, Plaintiff was not working

during her treatment with Dr. Napoli.  (*Id*.)

First, Plaintiff argues the ALJ failed to apply the "*Burgess* factors" in assessing

Dr. Napoli's opinions.  (Dkt. No. 16 at 16-19.)  Plaintiff's argument fails.  The ALJ

provided a detailed explanation for his decision to afford less than controlling weight to

Dr. Napoli's opinions and the ALJ's reasoning can be easily understood from a review of

his decision. *Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021); *see Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (although the ALJ's decision was silent on whether treating source was a specialist, the ALJ nonetheless gave good reasons for assigning less than controlling weight to the opinions).

      As outlined above, the ALJ acknowledged Dr. Napoli as a treating mental health care provider and summarized his treatment of Plaintiff, including medications. (T. 638.) The ALJ considered other evidence in the record containing objective observations of Plaintiff's mental status. (*Id*.) The ALJ noted some of Dr. Napoli's statements contained Plaintiff's self-reports and were "speculative." (T. 639.) The ALJ also discussed other medical opinion evidence in the record concerning Plaintiff's ability to perform mental work-related functions. (*Id*.) Further, Dr. Napoli did not provide an opinion concerning Plaintiff's functional abilities. Indeed, the doctor indicated he was "unable to assess" Plaintiff's functional abilities. (T. 628.) However, consistent with the ALJ's RFC, Dr. Napoli stated Plaintiff appeared able to relate appropriately with others. (T. 627, 637.)

      In addition, although Plaintiff argues the ALJ committed legal error in failing to apply the *Burgess* factors, in support of her argument she essentially argues evidence in the record supports Dr. Napoli's opinion "which stated Plaintiff's functioning was only when on medication and that she would be expected to miss appointments and begin noncompliance due to bipolar disorder." (Dkt. No. 16 at 17); *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). However, the ALJ discussed evidence in the record of Plaintiff's bipolar disorder,

associated symptoms, and issues with noncompliance and came to a different conclusion.  (T. 638-639.)  Under the substantial evidence standard, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Second, Plaintiff argues the ALJ failed to provide "good reasons" for affording Dr. Napoli's opinion less than controlling weight.  (Dkt. No. 16 at 19-21.)  Plaintiff acknowledges the ALJ provided several reasons for affording the opinions less than controlling weight but asserts none of the reasons "rose to the level of good reasons." (*Id*. at 19.)  Plaintiff's argument fails.  Here, the ALJ provided good reasons for not affording the opinions controlling weight.

The ALJ concluded Dr. Napoli's opinions were speculative, failed to consider Plaintiff's drug abuse, based on Plaintiff's subjective reports, and were inconsistent with other objective and opinion evidence in the record.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (the ALJ properly weighed opinion of treating physician concluding limitations provided were inconsistent with doctor's own treatment notes and plaintiff's self-report of her activities of daily living); *see Meyer v. Comm'r of Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019) (ALJ provided good reasons in weighing treating source opinion including the doctor's reliance on plaintiff's self-reports and inconsistency with other evidence in the record); *see Anselm v. Comm'r of Soc. Sec.*,

737 F. App'x 552, 555 (2d Cir. 2018) (ALJ properly afforded treating source opinions less than controlling weight based on their conclusory opinions; inconsistency with earlier assessments, plaintiff's own testimony about his lifestyle and capacity, and testing and diagnosis; and opinion evidence provided by non-examining medical expert). Therefore, the ALJ provided good reasons to support his weight determination.

Plaintiff argues remand is required because the ALJ's conclusion that Dr. Napoli did not treat Plaintiff while she was working part time was factually flawed. (Dkt. No. 16 at 21.) The ALJ reasoned Dr. Napoli's opinion, that Plaintiff would likely be non-compliant when exposed to pressures of work, was "speculative" and the ALJ noted the doctor did not treat Plaintiff while she was working part-time. (T. 640.) Plaintiff cites to a treatment notation dated February 2015 to support her assertion Dr. Napoli treated her while she was working part-time. (T. 604.) To be sure, Dr. Napoli's name appears on the progress note. (*Id*.) Although Dr. Napoli may have treated Plaintiff in February 2015, the treatment notation indicated Plaintiff was depressed due to familial situations, made no mention of work, and findings on examination were normal. (T. 603-604.) In addition, the ALJ relied on other reasons in affording Dr. Napoli's opinions less than controlling weight and the treatment notation identified by Plaintiff contained normal findings. Therefore, any error the ALJ may have made in making this conclusion is harmless.

Overall, the ALJ properly assessed the opinions provided by Dr. Napoli. The ALJ followed the treating physician rule and provided good reasons in affording the doctor's opinions less than controlling weight.

**B.  RFC Determination**

Plaintiff argues the ALJ afforded "great weight" to the opinion of the consultative examiner that she had moderate limitations in her ability to deal with stress; however, the ALJ's RFC determination failed to reflect this limitation.  (Dkt. No. 16 at 22-27.)  For the reasons outlined below, Plaintiff's argument fails.

On August 13, 2013, Janine Ippolito, Psy.D., performed a consultative psychiatric evaluation.  (T. 499-503.)  Dr. Ippolito opined Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a schedule, learn new tasks, and perform complex tasks independently.  (T. 502.)  The doctor opined Plaintiff could make appropriate decisions, relate adequately with others, and appropriately deal with stress with moderate limitations.  (*Id*.)  The ALJ afforded Dr. Ippolito's opinion "great weight."  (T. 639.)

First, contrary to Plaintiff's assertion, a finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work.  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *see McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (failure to incorporate limitations in a hypothetical is harmless error if the evidence demonstrates plaintiff can engage in simple, routine tasks or unskilled work despite limitations or the hypothetical otherwise implicitly accounted for plaintiff's non-

exertional limitations); *see Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  Therefore, an opinion of a moderate limitation in the ability to deal with stress did not prevent Plaintiff in performing the demands of unskilled work.

Second, an RFC limiting Plaintiff to simple, routine, repetitive work properly accounts for moderate limitations in the ability to deal with stress.  *See Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018) (ALJ's mental RFC limiting plaintiff to simple routine work properly accounted for opinions plaintiff had moderate limitations in various areas of mental functioning); *see Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (RFC for unskilled work accounted for moderate limitations with respect to stress); *see Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) ("it is well-settled that a limitation to unskilled work ... sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), *appeal dismissed* (Mar. 30, 2018) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning.").

Lastly, although Dr. Ippolito opined Plaintiff had a moderate limitation in dealing with stress, she nonetheless opined Plaintiff could perform simple and even complex tasks.  (T. 502.)  An RFC for simple routine work is not inherently inconsistent with limitations in a plaintiff's ability to deal with stress, or other specific areas of mental functioning, particularly where the source who provided such limitations ultimately

opined the plaintiff is capable of performing simple, routine, repetitive work.  *See Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. 2017) (although consultative examiner opined plaintiff had mild to moderate limitations appropriately dealing with stress, he was nonetheless able to perform simple, routine work and therefore the court could not conclude "a reasonable factfinder would have to conclude" that plaintiff lacked the ability to perform the ALJ's mental RFC) (*citing Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d. Cir. 2012)).

Therefore, contrary to Plaintiff's assertion, the ALJ did not fail to account for Dr. Ippolito's opinion Plaintiff had moderate limitations in her ability to deal with stress.  The ALJ afforded the doctor's opinion great weight and the doctor's opined limitations are reflected in the RFC limiting Plaintiff to unskilled work with no supervisor duties or production quotas and additional social limitations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        October 21, 2021

William B. Mitchell Carter
U.S. Magistrate Judge